**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GIORGI VAKHTANGADZE,** | **CIVIL ACTION** |
| **Petitioner,** | |
| **v.** | **NO. 26-cv-6630** |
| **J.L. JAMISON, et al.,** | |
| **Respondents.** | |

**<u>MEMORANDUM OPINION</u>**

**Pozos, J.** **October 2, 2026.**

This matter is before the Court on a Petition for Writ of Habeas Corpus filed by Giorgi Vakhtangadze, a citizen of the Republic of Georgia, who challenges his arrest and detention pending removal proceedings. ECF No. 1. Petitioner illegally entered the United States in March 2024, was detained by immigration authorities near the border between the United States and Mexico, and was released into the United States shortly thereafter. *Id.* On September 1, 2026, he was arrested during an unscheduled check-in at ICE's Philadelphia Intensive Supervision Appearance Program ("ISAP") Office, and detained pursuant to 8 U.S.C. § 1226(a). *Id.* Petitioner contends that "his arrest and continuing detention violate the Fourth and Fifth Amendments to the United States Constitution and the federal statute and regulations that govern when ICE may make a civil immigration arrest without a warrant . . ." *Id.* ¶ 4. Petitioner also asserts substantive and procedural due process claims under the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 5, 48-64. The Court finds, however, that Petitioner has failed to establish that his detention violates the Constitution or laws of the United States, and will deny the Petition.

## I. RELEVANT FACTS

Petitioner is a citizen of the Republic of Georgia, who entered the United States without inspection in March 2024. *See* ECF No. 1, ¶¶ 1, 18; *see also* ECF No. 3, Ex. C. He was detained by Border Patrol "approximately four miles west of [] SAN YISIDRO and approximately 50 yards north of the United States/Mexico International boundary," at which time he admitted that "he entered the United States illegally afoot on March 2, 2024." *See* ECF No. 3, Ex. C at 3-4; *see also* ECF No. 1, ¶¶ 1, 17-18. After being processed, Petitioner was released into the United States on an Order of Recognizance and given a Notice to Appear. *Id*; ECF No. 3, Ex. C. According to Petitioner, he "ultimately moved to Philadelphia, where he has built a life for himself," and has complied with all the conditions of his release, including appearing for regular check-ins as well as asylum and immigration proceedings, which remain pending. ECF No. 1, ¶¶ 19-21.

On September 1, 2026, Petitioner made an unscheduled appearance at ICE's Philadelphia ISAP Office after ICE failed to complete a pre-scheduled home visit at Petitioner's residence on August 31, 2026.[1] *Id.* ¶¶ 2, 22; ECF No. 14, ¶ 1.[2] ICE subsequently detained Petitioner. *Id.* ¶¶ 1, 5-8; ECF No. 1, ¶¶ 2, 21-22. At that time, Petitioner was issued a Notice of Custody Determination, which specified that he would be detained by the Department of Homeland Security pending final administrative determination of his case, and Petitioner requested review of that custody determination by an immigration judge. ECF No. 3, Ex. A at 2.

---

[1] Petitioner and the Government both originally asserted that Petitioner was detained following a scheduled check-in appointment with the ISAP Office. *See* ECF No. 1 ¶¶ 2, 21-22; ECF No. 3 at 3; ECF No. 8 at 1. At the hearing before this Court on September 25, 2026, counsel for both the Petitioner and the Government stated that Petitioner was arrested following an unscheduled visit to ICE's Philadelphia ISAP Office. Petitioner confirmed the latter circumstances in his September 29, 2026, affidavit. *See* ECF No. 14, ¶¶ 1, 3-5, 8; *see also* ECF No. 11, Ex. D at 3-4.

[2] During a hearing before this Court on September 25, 2026, Petitioner requested the opportunity to supplement the record in lieu of presenting additional evidence at the hearing, which was granted. Petitioner filed an affidavit on September 29, 2026. *See* ECF No. 14.

Petitioner originally contested his re-detention, in part, because he claimed the arrest was done without a valid warrant. ECF No. 1, ¶ 4. The Government asserts that Petitioner was arrested pursuant to a lawful administrative warrant. *See* ECF No. 3 at 3, 14; *id*. Exs. A-B; *see also* ECF No. 11, Exs. A-B; ECF No. 11, Ex. E, ¶¶ 3-12. The Government also challenges Petitioner's assertion that his re-detention was done without cause or adherence to ICE's internal procedures for the re-detention of noncitizens and contends that Petitioner was arrested pursuant to a pre-planned warrant issued by the appropriate Supervisory Detention and Deportation Officer following a determination that Petitioner had violated ISAP. ECF No. 11, Ex. E; ECF No. 3, Exs. A-B. Specifically, the record reflects that Petitioner was terminated from ISAP, or ICE's Alternatives to Detention Program ("ATD"), on August 25, 2026, for failure to comply with ISAP and labeled as an "absconder." *See* ECF No. 11, Ex. D at 3-4; *id*. Ex. E, ¶¶ 2, 4; *id*. Ex. G (showing Government database that identifies Petitioner as having missed a biometric check-in on August 18, 2026, failed an in-person home visit on July 6, 2026, and triggered a "Mater Zone Leave Alert" on the 12th and 13th of April 2025). Petitioner denies having violated ISAP and asserts that he was so dedicated to compliance that he went so far as to appear at ICE's Philadelphia ISAP Office on September 1, 2026, to inquire about the non-occurrence of a pre-planned home visit. *See* ECF No. 8 at 8; ECF No. 14, ¶¶ 1-2.

## II. <u>PROCEDURAL HISTORY</u>

Petitioner filed his Petition on September 2, 2026. *See* ECF No. 1. The United States filed its Response on September 11, 2026, as directed by the Court. *See* ECF No. 3. Petitioner filed his

Reply on September 18, 2026.[3] *See* ECF No. 8. The Government then supplemented its Response on September 24, 2026. *See* ECF No. 11. And the Court held a hearing on September 25, 2026, during which the Court heard the arguments of counsel and granted the request of Petitioner's counsel for an opportunity to submit further evidence for the record, in lieu of testimony by Petitioner. Petitioner filed an affidavit on September 29, 2026, detailing the events surrounding his September 1, 2026, arrest and subsequent re-detention. *See* ECF No. 14.

## III. LEGAL STANDARD

Federal courts may issue writs of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petitioner has the burden of demonstrating that the challenged detention is unlawful. *See Ubaid v. Jamison*, No. 26-2681, 2026 WL 1346670, at *2 (E.D. Pa. May 14, 2026) (citing *Goins v. Brierly*, 464 F.2d 947, 949 (3d Cir. 1972) ("It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody.")).

## IV. DISCUSSION

### A. Jurisdiction

As a preliminary matter, the Court has an obligation to examine its own jurisdiction. Under 8 U.S.C. § 1226(e), "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the

[3] During that time, on September 17, 2026, counsel for the United States notified the Court that Petitioner was transferred from the Eastern District of Pennsylvania to the Moshannon Valley Processing Center, located in the Western District of Pennsylvania, in violation of this Court's September 3, 2026 Order (ECF No. 2) directing the Government to respond to the Petition and prohibiting the United States from transferring Petitioner outside the Eastern District of Pennsylvania pending further order of the Court. *See* ECF No. 7. Petitioner was subsequently returned to the Eastern District of Pennsylvania and was present for the hearing on September 25, 2026.

Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." In *Demore v. Kim*, the Supreme Court evaluated Section 1226(e) and found that it "contains no explicit provision barring habeas review," and that "its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention . . ." 538 U.S. 510, 518 (2003); *see also Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) ("§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention . . .'" and authorizes review of "the extent of the Government's detention authority.") (internal citations omitted). The Court will proceed on that basis.[4]

**B. Petitioner Has Failed to Exhaust His Administrative Remedies**

Section 1226(a) provides: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Further, "[e]xcept as provided in subsection (c) [relating to mandatory detention] and pending such decision, the Attorney General (1) may continue to detain the arrested alien . . ." *Id.* If the alien is not subject to mandatory detention under 8 U.S.C. § 1226(c), the DHS district director makes an initial custody determination. *See* 8 C.F.R. § 236.1(c). Thereafter, if the alien is not subject to a final order of removal, the alien may seek release by requesting a bond hearing before an immigration judge, with appeal to the Board of Immigration appeals. 8 C.F.R. §§ 236.1(d), 1003.19.

[4] The Court similarly finds that 8 U.S.C. § 1252(g), which precludes review of "any cause or claim . . . arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," does not deprive the Court of jurisdiction in this instance. *See Ubaid*, 2026 WL 1346670, at * 2 (applying *Jennings*, 583 U.S. at 294).

"In general, [a petitioner] must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241." *See Ubaid*, 2026 WL 1346670, at *3 (quoting *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam)); *see also Beradze v. Jamison,* No. 26-07111, 2026 WL 2859721, at *1 (E.D. Pa. Sept. 23, 2026) (citing *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (explaining the Third Circuit has "consistently applied an exhaustion requirement to claims brought under § 2241")). "Requiring exhaustion is 'particularly important in the resolution of cases involving constitutional issues,' as here." *See Piatukho v. Jamison*, No. 26-6413, 2026 WL 2719267, at *3 (E.D. Pa. Sept. 15, 2026) (quoting *Republic Indus. v. Cent. Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir. 1982) ("If the administrative tribunal decides a case on nonconstitutional grounds, the court may find it unnecessary to proceed with constitutional adjudication. In this way, exhaustion furthers the concept of judicial restraint . . .")).

Here, it is undisputed that Petitioner has requested a bond hearing, and that the request is pending.[5] A bond hearing under Section 1226(a) fully meets constitutional requirements, for the reasons discussed in greater detail below, and would provide Petitioner with an individualized review of his detention. Moreover, there is no evidence in the record that requiring Petitioner to exhaust his administrative remedies with respect to the circumstances of his individual detention

[5] At the hearing before this Court on September 25, 2026, counsel for the Government represented that a bond hearing was scheduled to occur on September 28, 2026, and that it would not contest jurisdiction if Petitioner were transferred to a facility outside the Eastern District of Pennsylvania where such a hearing would be available. Petitioner's counsel declined the Court's invitation to allow Petitioner to be transferred to such a jurisdiction in the interests of facilitating further discussion between Petitioner and his counsel to finish augmenting the record in this matter.

would be futile.[6] While Petitioner's counsel noted the risk that Petitioner might be moved to a jurisdiction where such individualized bond hearings are not offered under the prevailing interpretation of the law in those circuits if this Court were to deny the Petition, the United States represented that it would consent to the condition that the Government be required to keep the Petitioner within the Commonwealth of Pennsylvania during the pendency of his immigration proceedings.

Accordingly, the Petition is denied for failure to exhaust his administrative remedies.

**C. Petitioner is Not Entitled to Relief on Substantive Due Process Grounds**

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V, cl. 4.

In addition to the rights set forth in the Constitution, the Due Process Clause of the Fifth Amendment has also been interpreted to "specially protect[] those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if it were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations omitted). In evaluating whether a claimed unenumerated right meets this standard, courts "engage[] in a careful analysis of the history of the right at issue," and "[h]istorical inquiries of this nature are essential whenever we are asked to recognize a new component of the 'liberty' protected by the Due Process Clause .

---

[6] The Court notes that other courts have determined that review would be futile because individualized bond hearings are not available to noncitizens held at the Federal Detention Center in Philadelphia. *See, e.g.*, *De Los Santos Medina v. Jamison*, No. 26-6800, 2026 WL 2742071, at *4 (E.D. Pa. Sept. 16, 2026). At the hearing on September 25, 2026, however, counsel for the Government confirmed that an individualized bond hearing by an immigration judge authorized to release Petitioner, if appropriate, would be available to him if the Petition were denied, though the bond hearing would occur once the Petitioner was transferred to a facility outside the Eastern District where those proceedings are available.

. .” *Dobbs v. Jackson Women’s Health Org.*, 597 U.S. 215, 238-39 (2022); *see also Glucksberg*, 521 U.S. at 711-16 (surveying “over 700 years” of “Anglo-American common-law tradition”).

“Substantive due process analysis must begin with a careful description of the asserted right, for ‘[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.’” *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)) (internal quotations omitted); *Glucksberg*, 521 U.S. at 720 (explaining necessity for the “utmost care” “lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences” of the judiciary) (internal quotations and citation omitted).

In this case, Petitioner asserts a non-enumerated substantive due process right to be free from re-detention during removal proceedings, absent a material change in Petitioner’s circumstances from those which existed at the time of his original release. ECF No. 1, ¶ 5. In support of this argument, Petitioner relies on the principle that: “Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies the heart of the liberty that the [Due Process] Clause protects.” *Id.* ¶¶ 26-31, 48, 53-54; *see*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This is black letter law. What is lacking, however, is a link between the general liberty interest in freedom from detention “without due process of law” (procedural due process), and the claimed non-enumerated substantive due process right to be free from re-detention during the pendency of removal proceedings which Petitioner asserts in his Petition.[7] *See generally* ECF No. 1. The Supreme Court has clearly held that “[d]etention during

[7] Similarly, Petitioner’s invocation of *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020), is inapposite. In that case, the Third Circuit did not find a non-enumerated substantive due process right, but rather found that procedural process, in the form of an individualized bond hearing, became necessary with the passage of time. *Id.* at 213 (finding Petitioner was “thus entitled to a bond hearing to gauge whether he still needs to be detained . . .”).

removal proceedings is a constitutionally permissible part of that process." *See Demore*, 538 U.S. at 531 (analyzing, *inter alia*, *Zadvydas*, 533 U.S. 678). And Petitioner has not pointed to, nor is the Court aware of, any historical evidence that such an unenumerated right to be free from re-detention absent a material change in circumstance is so "'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if it were sacrificed.'" *Glucksberg*, 521 U.S. at 720-21. Accordingly, the Court will turn to the issue of the process due to noncitizens, like Petitioner, who are subject to re-detention during the pendency of removal proceedings.

**D. The Constitution Does Not Require a Hearing Prior to Re-Detention, and Does Not Confer a Due Process Right to Not Be Re-Detained Absent Evidence of Materially Changed Circumstances**

Petitioner contends that the availability of a bond hearing pursuant to 8 U.S.C. § 1226(a) is inadequate for individuals who are subject to re-detention during the pendency of removal proceedings, that he is entitled to a hearing prior to being re-detained, and that he may not be re-detained without evidence of materially changed circumstances. ECF No. 1, ¶¶ 3, 33, 56-64. This Court disagrees.

When evaluating the process due to noncitizens under the Due Process Clause, courts consider:

> (1) [T]he private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Buele Morocho v. Warden Phila. FDC*, Nos. 26-1150, 26-1454, __ F.4th __, 2026 WL 2546223, at *9 (3d Cir. 2026) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This Court will not tarry on the threshold question of whether process is due at all, as the Third Circuit recently held

in a precedential opinion that mandatory detention of noncitizens who were present in, and had established connections to, the United States violated the Due Process Clause. *See Buele Morocho*, 2026 WL 2546223, at *8-10 (applying the *Mathews* factors). Concluding that otherwise law-abiding noncitizens present in the United States are entitled to a bond hearing does not, however, lead to the conclusion that they are constitutionally entitled to notice and a hearing prior to being re-detained. Rather, the Court finds, after careful consideration of the relevant factors, that a bond hearing within a reasonable time after the noncitizen's detention, of the type provided under Section 1226(a) and its implementing regulations, is adequate under the Due Process Clause. This is particularly appropriate where the Petitioner does not appear to be in compliance with the terms of his release. *See* ECF No. 11, Exs. A-B, D-G.

1. Private Interest

Petitioner has a clear interest in being free from physical restraint. *See*, *e.g.*, *Zadvydas*, 533 U.S. at 690; *Buele Morocho*, 2026 WL 2546223, at *9 (explaining "[f]reedom from imprisonment – from custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects," and recognizing the particular interests of "noncitizens who have lived in the United States for extended periods of time with no criminal records") (citations omitted). In the criminal context, the Supreme Court has recognized a particular reliance interest for those on conditional release who have complied with the terms of their release. *See*, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked if he fails to live up to the parole conditions.").

The Court also notes, however, that the Supreme Court has not required pre-deprivation notice or a hearing before revoking conditional release – despite the common liberty interest in avoiding restraint. *Id.* For example, in *Morrissey*, the Supreme Court found that a "revocation

hearing must be tendered within a reasonable time after the parolee is taken into custody," rather than prior to renewed detention. 408 U.S. at 488; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (finding, in the context of probation revocation, that "a parolee is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* . . .").[8] Indeed, the procedures required by *Morrissey* "are deemed 'pre-deprivation' not because they precede all detention, but because they precede the final revocation of probation or parole." *See O.F.C. v. Almodovar*, No. 25-9816, 2026 WL 74262, at *8 (S.D.N.Y. Jan. 9, 2026). "Rather, the 'pre-deprivation' process that *Morrissey* requires is (1) a prompt and preliminary post-arrest hearing where a neutral adjudicator determines the existence of probable cause of a parole or probation violation; and (2) a final hearing regarding whether such a violation has occurred and whether it justifies final revocation of parole or probation." *Id.* (citing *Morrissey*, 408 U.S. at 485-89). Accordingly, the Court finds that Petitioner's invocation of *Morrissey* weighs against finding a Due Process right to notice and a hearing prior to being re-detained, and that a prompt bond hearing before a neutral adjudicator followed by a final determination regarding whether the noncitizen shall be removed is sufficient.

Further, while noncitizens have due process rights in immigration proceedings, "since *Mathews*, [the Supreme Court] has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522; *see also Reno*, 507 U.S. at 305-6 ("Thus, in the exercise of its broad power over

[8] In *Tarapchak v. Cnty. of Lakawana*, the Third Circuit found that, "[a]though both bail and parole are conditional liberties, a bailee has a greater liberty interest because, unlike a parolee, a bailee has not been convicted, and the presumption of innocence still applies." 739 F. App'x 172, 177 (3d. Cir. 2018). The Court did not, however, opine on the level of process due, and rather assumed in that Section 1983 action that compliance with Pa. R. Crim. P. 150(A) would satisfy due process requirements, before proceeding with its analysis. *Id.*

immigration and naturalization, Congress regularly makes rules that would be unacceptable if applied to citizens.") (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (internal punctuation and citation omitted)).[9] It would be incongruous to find that the Due Process Clause requires greater protections, beyond those specified in Section 1226(a) and its implementing regulations, for noncitizens present in this country without legal authorization than it does for citizens with substantially similar liberty interests.

For these reasons, the Court finds that the liberty interests of noncitizens like Petitioner, while significant, do not mandate notice and a hearing prior to re-detention in removal proceedings.

2. Risk of Erroneous Deprivation

The risk of erroneous deprivation is also mitigated by the availability of an individualized bond hearing under Section 1226(a), and is consistent with the procedures required by *Morrissey*, discussed *supra*. Accordingly, the Court finds that the availability of a post-arrest bond hearing under Section 1226(a) weighs against requiring the pre-arrest notice and hearing sought by Petitioner.

3. The Government's Interest

Petitioner contends that "Respondents' decision to re-detain [him] absent a material change in circumstances violates his substantive due process rights because his re-detention is not

[9] The Court is also aware of the Third Circuit's opinion in *E.D. v. Sharkey*, which found that "immigration detainees are entitled to the same due process protections [as pretrial detainees]." 928 F.3d 299, 306-307 (3d Cir. 2019). In that case, however, the Third Circuit was interpreting the Fourteenth Amendment's requirements for the conditions of confinement in a Section 1983 case, rather than the constitutionality of procedural rules established by Congress to regulate immigration, and this Court does not construe the *Sharkey* decision as being intended to conflict with the Supreme Court's guidance in *Demore*, *Flores*, or the other Supreme Court cases cited therein.

reasonably related to the Government's lawful justifications for immigration detention, which are ensuring attendance at removal proceedings and preventing danger to the community." ECF No. 1, ¶ 5; *see also Zadvydas*, 533 U.S. at 690 (recognizing interests of the Government in preventing flight and protecting the community). Even construing this argument as a procedural, rather than substantive, due process argument (*see* Section C, *supra*.), the Court disagrees.

First, while a noncitizen's behavior may not have changed between his release and re-arrest, there is a real risk that a noncitizen in removal proceedings – particularly those with substantial ties to the United States – may cease to comply with the conditions of their release if they learn that the Government is moving with dispatch to effectuate their detention and removal from the country. Under such circumstances, the risk of endorsing a rule that effectively creates a window to flee before detention may be effectuated weighs against requiring the United States to provide notice and a hearing before effectuating detention under Section 1226(a).

Second, the Government's interest in ensuring a noncitizen's appearance at removal proceedings is particularly strong where the noncitizen is not in compliance with the terms of his or her release. While the process due under Section 1226(a) is adequate, it is particularly so in cases where the noncitizen is in breach of the conditions under which he is at liberty.

For these reasons, the Court finds that the balancing of the *Mathews* factors demonstrates that an individualized bond hearing under Section 1226(a) and the implementing regulations are adequate, subject to the self-evident caveat that they must occur. For those reasons, while the Court will deny the Petition, it will order that Petitioner not be moved outside of Pennsylvania during the pendency of his removal proceedings, so that he may be afforded the process to which he is due under the law as enunciated by the Third Circuit and implemented in this opinion.

**E. Petitioner Has Not Established a Violation of the Fourth Amendment, 8 U.S.C. § 1357(a)(2), or 8 C.F.R. § 287.8(c)(2)**

Finally, to the extent that Petition contends that his detention was unlawful because it was effectuated without a warrant, this argument fails as well.

The relevant question on habeas review "is whether Petitioner is presently 'in custody in violation of the Constitution or laws or treaties of the United States,' and not whether ICE's paperwork could have been more complete at the moment of arrest." *Par v. Jamison*, No. 26-3504, 2026 WL 1603299, at *4 (E.D. Pa. June 4, 2026) (Perez, J.); *see also Cocha v. Tsoukaris*, No. 26-9857, 2026 WL 2806733, at *3 (D.N.J. Sept. 18, 2026) ("The Court will not order Petitioner's release based on an alleged arrest defect, when Petitioner's custody is now lawful."); *cf. Frisbie v. Collins*, 342 U.S. 519, 522 (1952) (finding that irregularities in the manner of a criminal defendant's arrest do not preclude ensuing prosecution). It is undisputed that a warrant was issued for Petitioner's arrest, and that that he is currently in custody pursuant to that warrant. Accordingly, his arguments fail in this respect as well.

Further, even if the Court were to review the facts surrounding Petitioner's arrest at the time of his re-detention, the record demonstrates that Petitioner's arrest was the result of the Government's determination that Petitioner was in violation of the terms of his release, and the consequent termination of his participation in ISAP. *See* ECF No. 3 at 3, 14; *see also* ECF No. 11, Ex. D at 3-4; ECF No. 11, Ex. E, ¶ 2; ECF No. 11, Ex. G. While Petitioner contends that preparation of the warrant may not have been completed until his arrest was effectuated, it is undisputed that the arrest was pre-planned due to the Government's concerns regarding what it understood to be his failure to complete check-ins mandated as a condition of his release. *See id.* Exs. A-B, D-G; *see also* ECF No. 14, ¶¶ 3-5. The Government has presented evidence that ICE came to learn that Petitioner was present at the offices of BI Incorporated, which administered the

program under which Petitioner was released at approximately 10:32 a.m. on September 1, 2026, and the warrant was prepared, likely in "scratch" form prior to the planned arrest and, at least contemporaneously with Petitioner's arrest. *See* ECF No. 3 at 3; *see also* ECF No. 11, Ex. D at 3-4; ECF No. 11, Ex. E, ¶¶ 2-12. To the extent that Petitioner believes that the Government erred in concluding that he poses a risk of flight based on violations of the conditions of his release, he may present those arguments to the immigration judge at his bond hearing. With respect to the legality of his arrest, however, the record demonstrates that the Government made an individualized determination to detain Petitioner based on its understanding of his non-compliance with the terms of his release, and that Petitioner has not established that his arrest violated the Fourth Amendment, 8 U.S.C. § 1357(a)(2), or 8 C.F.R. § 287.8(c)(2). *See* ECF No. 11, Exs. D-G. The Petition is denied on that basis as well.

## V. CONCLUSION

For the foregoing reasons, the Petition will be denied, and an appropriate Order will follow.

/s/ Antonio M. Pozos
**ANTONIO M. POZOS, J.**